UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LEVY GARDENS PARTNERS 2007, LP | CIVIL ACTION |
| VERSUS | NO. 10-4261 |
| LEWIS TITLE INSURANCE COMPANY, INC., ET AL. | SECTION "N" (2) |

## ORDER AND REASONS

Before the Court are the following two cross motions: (1) the Motion for Partial Summary Judgment As To Liability (Rec. Doc. 68), filed by Plaintiff Levy Gardens Partners 2007, LP ("LG"); and (2) the Motion for Summary Judgment (Rec. Doc. 70), filed by Defendant Commonwealth Land Title Insurance Company ("Commonwealth"). Both motions are opposed. (See Rec. Docs. 69 and 72, respectively). Further, supplemental briefing has been accepted and considered by the Court. (See Rec. Docs. 75, 78, 82, and 83). After considering all the memoranda of the parties and the applicable law, the Court rules as set forth herein.

I.     BACKGROUND

On December 19, 2006, the Louisiana Housing Finance Agency ("LHFA") awarded LG $250,000 in tax credits to augment $11,000,000 in Community Development Block Grant ("CDBG") funds by the Louisiana Office of Community Development ("OCD") to build a 199 unit "mixed income" housing complex in New Orleans East. (Exhibit 1 to Rec. Doc. 68). LG requested a zoning endorsement as part of its title insurance policy to ensure that the property

could be used for the intended purpose of building a multi-family, mixed income housing project.  Prior to agreeing to this, on November 28, 2007, Lewis Title Insurance Company ("Lewis Title") obtained a letter from the New Orleans Department of Safety and Permits ("CNODSP") Zoning Administrator, Ed Horan, confirming the "permitted use" status of the property. This letter stated, in pertinent part:

> The [LG] Subdivision located at 40829 Levy Drive (Lot No. 3A-6-1A-1, Square 26), has a zoning determination of R.O. Multi-family uses are permitted in the R.O. District.

(Exhibit 3 to Rec. Doc. 68).

On December 3, 2007, Commonwealth issued commitments for the following policies: (1) Owners Policy No. E-14 0005523 for LG in an amount to be determined; (2) Loan Policy No. L-14 0005193, for First National Bank ("FNB") for $5,954,250; and (3) Loan Policy No. L-14 0005195 for OCD for $11,614,548. (Exhibit 2 to Rec. Doc. 68).   Consistent with Horan's indication in the letter, on February 14, 2008, CNODSP issued four building permits to LG. (Exhibit 4 to Rec. Doc. 68).

On October 7, 2008, Commonwealth issued title insurance policy number E14-0005523 ("Owner's Policy"), to LG.  LG's requested zoning endorsement was included in the Owner's Policy at a cost of $7,158.84, and essentially insured against loss or damage sustained in the event that, on the date of the policy, the property was not zoned as insured and/or multifamily housing was not allowed under its classification.  (Exhibit D-1 to Rec. Doc. 70).

On October 22, 2008, 15 days after Commonwealth issued the title insurance policy on the property, a Petition for a Writ of Mandamus was filed by the East New Orleans Neighborhood Advisory Commission ("ENONAC").  The writ of mandamus was granted and

2

the Court required the CNODSP to determine which permits fell within the conditional use designation of the Eastern New Orleans Renaissance Corridor District ("ENORCD") and which fell within the permitted use designation (outside of the ENORCD) under the City of New Orleans Comprehensive Zoning Ordinance ("CZO"). (Exhibit 15 to Rec. Doc. 68).  On November 14, 2008, Paul May, the Director of CNODSP, signed an affidavit deeming the permits to be in the permitted use designation and in compliance with the CZO.  (Exhibit 16 to Rec. Doc. 70).  The writ of mandamus was deemed satisfied and was rescinded on November 24, 2008.

On December 1, 2008, Ordinance 23343 expanded the boundaries of the ENORCD to include LG's immovable property. (Exhibit D-5 to Rec. Doc. 70).  This expansion placed additional restrictions on the property. Commonwealth asserts that this expansion caused the R.O. zoning to become subject to a conditional use permit process in order to build multi-family housing.  (Exhibit D-4 to Rec. Doc. 70). LG, on the other hand, asserts that building a multi-family housing establishment on this property was never a permitted use (despite assurances to the contrary from various sources) because of a 1985 ordinance[1] (see discussion of Ordinance 10733 *infra*), which no one consulted until after the fact.

ENONAC filed a second suit on January 22, 2009, requesting injunctive relief.  The state trial court granted the preliminary injunction requiring LG to complete the conditional use process. (CDC Docket # 09-00802, Exhibit 19 to Rec. Doc. 68).  The Louisiana Fourth Circuit Court of Appeal affirmed, finding no abuse of the trial court's discretion, and the Louisiana Supreme Court denied writs. (4th Circuit Docket # 2009-CA-0326, Exhibit 21 to Rec. Doc. 68,

---

[1] (See attachment to Exhibit 43 to Rec. Doc. 72).

and *ENONAC v. Levy Gardens*, 2009-1870 (La. 11/25/09), 22 So.3d 169). Subsequently, LG filed suit against Commonwealth for payment under the title policy (and zoning endorsement included therein). Specifically, LG argued that its inability to occupy, use, and enjoy the Property because of a 1985 zoning ordinance which prohibited the intended use of the Property for multi-family purposes, was a covered risk under the Policy.

The instant cross motions for summary judgment were filed in an attempt to dispose of the liability portion of the case (i.e, whether there is coverage under the policy(ies)) on an expedited basis.

## II.   LAW AND ANALYSIS

### A.   Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554,

91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*citations omitted*). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." See *id.* (*emphasis in original*) *(citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

5

Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir.2002).

### B.    Discussion of Law to Facts

Turning first to LG's Motion for Partial Summary Judgment, it seems LG 's motion unfortunately focuses mostly on issues that matter only *if* coverage is found to exist (i.e., waiver, estoppel, breach of duty of good faith and fair dealing, breach of duty to adjust and settle claims fairly and promptly, and violation of Rules 1, 8(f), and 11 of the Federal Rules of Civil Procedure). Because "coverage" vel non is the threshold issue, the Court finds that such issues are prematurely addressed in this motion. Even so, LG's motion as to these issues is denied because genuine issues of material fact exist, which preclude granting summary judgment on these issues at this time.

To the extent that LG's motion addresses the issue of coverage, the Court notes that *if* coverage is found to exist (see *infra*), LG is only entitled to recover under one policy: the Owner's Policy, number E-14 0005523. The Owner's Policy is the *only* policy on which LG is a named insured. The remaining policies are written in favor of LG's lender, FNB, and the OCD.

On the showing made, LG has provided no proof of any such subrogation rights, nor has it provided any evidence that it can recover under the two lenders' policies to which it refers.

Moving on to the critical issue of whether there is coverage under the Owner's Policy, both motions focus on the zoning endorsement at issue. This endorsement declares, in pertinent part:

> 1. The Company Insures against loss or damage sustained by the Insured in the event that, at Date of Policy,
>
>> a. According to applicable zoning ordinances and amendments, the Land is not classified Zone RO (as to that portion of Lot L that was Lot 3A-6-1A-1) & B2 (as to that portion of Lot L that was Lot 3A-6-1A-2C)
>>
>> b. The following use or uses are not allowed under that classification: multifamily housing (as to that portion of Lot L that was Lot 3A-6-1A-1);    parking (as to that portion of Lot L that was Lot 3A-6-1A-2C).
>
> 2. There shall be no liability under this endorsement based on
>
>> a. Lack of compliance with any condition, restrictions, or requirements contained in the zoning ordinances and amendments, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses. This paragraph 2.a. does not modify or limit coverage provided in Covered Risk 5.
>>
>> b. The invalidity of the zoning ordinances and amendments until after a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses. ...

(Exhibit D-1 to Rec. Doc. 70). First, Commonwealth argues that, on the date of the Owner's Policy, issued October 7, 2008, the property at issue was zoned as insured. Commonwealth points to the letter issued by the CNODSP, which affirmed the zoning of the property. (Exhibit 3

to Rec. Doc. 68). Commonwealth notes that LG had also been issued building permits in accordance with the zoning regulations. (Exhibits 4 and 10 to Rec. Doc. 68). Commonwealth also highlights an interoffice law memo drafted by the legal department for the CNODSP, affirming the zoning of the property. (Exhibit 6 to Rec. Doc. 68). Indeed, even after the policy was issued, the zoning was re-affirmed by an affidavit of Paul May on November 14, 2008. (Exhibit 16 to Rec. Doc. 68). Thus, Commonwealth asserts that on the date of the issuance of the policy, the property was zoned as insured[2], and no coverage is owed to LG.

This Court disagrees. The Owner's Policy included a zoning endorsement. The property was insured as having multi-family housing as a "permitted use". While this Court is not necessarily bound by the state court decisions on this issue, the undersigned agrees with those decisions and finds they support the fact that, on October 7, 2008, 1985 Ordinance 10733 (see attachment to Exhibit 43 to Rec. Doc. 72), which was "missed", did not allow LG to proceed under a "permitted use" scenario.[3]

Indeed, the opinions relied upon by Lewis Title and Commonwealth seem to have been simply wrong. Further, these incorrect opinions expressed by the City Law Department, Zoning Administrator Horan, and Safety and Permits Director May did not remove the risk that the 1985

---

[2] This Court disagrees with LG's contention that this defense was never articulated until recently and was waived by Commonwealth. Commonwealth included non-coverage in its affirmative defenses, and its argument regarding the property being "zoned as insured" goes to Commonwealth's non-coverage defense.

[3] Again, this Court is not finding that the related state court decisions are the "law of the case." It is merely citing them and the reasoning therein to make a coverage determination in this case. As for Commonwealth's argument that it was only a preliminary injunction which was entered in the state trial court (and affirmed by the Fourth Circuit and Louisiana Supreme Court), and not a full trial on the merits, the Court finds no reason to conclude that a trial on the merits would have produced a different result. Further and notably, as for whether 1995 Ordinance 16976 repealed the 1985 Ordinance, the Court agrees with the state district judge (and the state appellate court decisions affirming that opinion), that the 1995 Ordinance adopting the CZO did not repeal the 1985 Ordinance, which was still in effect on the date the closing took place. (See Exhibit 51 to Rec. Doc. 72).

Ordinance applied and prohibited a "permissive use" development.  The issuance of the zoning endorsement (paid for by LG and issued to LG under the Owner's Policy) seemingly should have been preceded by a thorough abstract, which would have revealed 1985 Ordinance 10733, without asking a third party (even one in a position to know the correct answer).  Notably, this ordinance had been a matter of public record for 22 years when the title closing took place.  A thorough abstract was not conducted, however, and the parties find themselves in the situation herein because of that failure.  In sum, when the Owner's Policy with the zoning endorsement was issued, 1985 Ordinance 10733, which did not allow LG to proceed under a permitted use scenario (i.e., "multifamily housing" was not a "permitted use"), was in effect and had been so for more than 20 years. Thus, the Court concludes that, contrary to Commonwealth's assertion, the property was not zoned as insured on the date the Owner's Policy (with the zoning endorsement) was issued.

Commonwealth argues that because the state trial court's Judgment instructs LG to undertake the "conditional use process"[4] and because the only ordinance analyzed by the state trial court in its Reasons for Judgment that allows for a conditional use process is the 2008 ordinance[5], then there is no coverage under the Owner's Policy because the 2008 Ordinance came into affect after the Owner's Policy was issued.  This argument is without merit because it was NOT the December 2008 amendment that caused LG not to be able to build; rather it was

---

[4] The trial court's judgment grants a preliminary injunction preventing further construction until "such time as the conditional use process has been completed." (Exhibit 51 to Rec. Doc. 72). The trial court then stated "[a]t this point it was clearly the intent of the City Council of the City of New Orleans that this tract of land would be subject to the conditional use process as it pertained to multiple-family housing." (*Id.* at p. 2).

[5] The 2008 Ordinance made property zoned R.O. and located within the ENORCD subject to the conditional use permit process in order to build multi-family housing.

1985 Ordinance 10733. As LG points out, the land was not properly zoned as insured when the policy was issued, because the existing 1985 Ordinance 10733 did not allow LG to proceed under a permitted use scenario (i.e., "multifamily housing" was not a "permitted use"). This scenario, unfortunate as it is, is precisely the reason why LG requested and purchased title insurance, and paid extra for a zoning endorsement to be included therein.

Next, Commonwealth asserts that, if liability/coverage is found, such should be reduced to the extent that LG failed to comply with the requirements that it complete the conditional use process as ordered by the Judgment. LG contends, on the other hand, that it would be a "vain and useless act" to go through the process. Commonwealth's arguments that LG should be required to go through the conditional use process are without merit in so far as coverage is concerned. The entire point of LG purchasing title insurance and paying extra for a zoning endorsement was so it would not have to go through the conditional use process. It was assured and insured that multi-family housing was a permitted use, making the need to undergo the conditional use permit process unnecessary.

Also, Commonwealth asserts that LG did not provide it with sufficient notice under the terms of the policy.[6] Commonwealth argues that LG did not provide notice until after an adverse judgment had been rendered against it, and any notice LG did provide was defective. Specifically, Commonwealth complains that notice under the Owner's Policy was provided only after writs had been filed in the Louisiana Fourth Circuit Court of Appeal. LG admits that three days *after* the decision was made at the state trial court level, it put Commonwealth on notice.

---

[6] The "notice" section of the policy states that if Commonwealth is prejudiced by the failure to provide notice, then Commonwealth's liability should be reduced to the extent of the prejudice. (Exhibit 14 to Rec. Doc. 68).

LG asserts that Commonwealth could have intervened, could have provided additional counsel, could have moved the district court for reconsideration, and could have participated in the appeal process and in the request for supervisory writs to the Louisiana Supreme Court, but it did not. On the showing made, the Court finds that there are genuine issues of material fact that prohibit summary judgment on the inadequate notice claim.

Last, Commonwealth contends that even if, on the date of the policy, the Court finds that the property was not zoned as insured (which the Court so finds herein), Commonwealth still does not owe coverage because there are other conditions in the policy with which LG must comply before Commonwealth can be required to provide coverage. Specifically, Commonwealth argues that there must be a final judicial decree if the validity of the zoning ordinance has been challenged, and there has been no final judicial decree as to whether the zoning scheme in question is valid. However, the Court finds that this provision is of no moment as no one is questioning the validity of the zoning scheme. This case arose because an otherwise valid Ordinance (i.e, 1985 Ordinance 10733), which had been a matter of public record since 1985, was simply missed and now is being enforced. The zoning endorsement purchased by LG was meant to protect it in this type of unfortunate scenario, regardless of final outcome by way of judicial decree.

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the **Motion for Partial Summary Judgment As to Liability (Rec. Doc. 68)** is **GRANTED IN PART AND DENIED IN PART**, as set forth herein.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 70)**

is **DENIED.**

New Orleans, Louisiana, this 16th day of May, 2011.

_____
**KURT D. ENGELHARDT**
**United States District Judge**